IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DYNAMITE MARKETING, INC., | ) |
| Plaintiff, | ) Civil Action No. _____ |
| v. | ) JURY TRIAL DEMANDED |
| HIT PROMOTIONAL PRODUCTS, INC., | ) |
| Defendant. | ) |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Dynamite Marketing, Inc. ("Dynamite" or "Plaintiff"), through its attorneys, sues the defendant named above and says:

**STATEMENT OF THE CASE**

This is a suit by Dynamite against Defendant, HIT Promotional Products, Inc. ("HIT" or "Defendant") for permanent injunction, damages, treble damages or profits, compensatory damages, punitive damages, pre-judgment interest, attorneys' fees and costs from defendant for its willful and malicious acts. Namely, Defendant is being sued by Dynamite as a result of Defendant's sale, offers for sale, distribution, promotion and advertisement of unauthorized and illegal copies of Dynamite's patented product the Wallet Ninja, which is a flat, credit-card shaped multi-tool.

**THE PARTIES**

1. Dynamite is a New York corporation with an address at 2258 84th Street, 3rd Floor, Brooklyn, New York 11214.

2. HIT is a Delaware Corporation with a principal business address of 7150 Bryan Dairy Road, Largo, FL 33777. Personal jurisdiction over HIT is therefore proper in Delaware and in this judicial district.

## SUBJECT MATTER JURISDICTION AND VENUE

3. This Court has jurisdiction under 17 U.S.C. §101 et seq.; 28 U.S.C. §1331(federal question), and under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., and under 28 U.S.C. §1338 (design patent, and trademark).

4. This Court has supplemental jurisdiction over the claims in the Complaint that arise under the statutory and common law of the State of Delaware pursuant to 28 U.S.C § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

5. Venue is proper in this District under 28 U.S.C. § 1400(b) because HIT is a resident of Delaware.

## FACTS COMMON TO ALL COUNTS

### Dynamite's Intellectual Property

### The Wallet Ninja

6. Dynamite is a leading innovator and marketer of various products and is in the business of bringing delightful consumer products to market.

7. At 16 years old, Dynamite's CEO, Alexander Shlaferman, started his first company, Vante Toys, Inc. ("Vante") and established himself as a product innovator who successfully launched several products in the national toy market.

8. In about 2013, at 19 years old, Mr. Shlaferman had an idea for a unique, novel and distinct design of a credit card sized 18-part tool he named the WALLET NINJA.

9. Through his prior company, Vante, Mr. Shlaferman developed the design for the WALLET NINJA.

2

10. While at Vante, Mr. Shlaferman invested his own funds to develop and launch the WALLET NINJA. A photo of one example of a Wallet Ninja product is shown below.



**The Wallet Ninja Patent**

11. On February 26, 2014, Mr. Shlaferman, filed a design patent application for his invention of a unique, novel and distinct design of a credit card sized multi tool, with the United States Patent and Trademark Office. The application received the Serial Number of 29/483,224.

12. On January 16, 2015, Mr. Shlaferman assigned all rights, title and interest in and to application 29/483,224, to Vante.

13. A United States patent issued from the application on March 22, 2016 having the Design Patent Number D751,877 (the "877 Patent").

14. In April of 2018, Mr. Shlaferman formed Dynamite as part of his desire to expand his product offerings from toys into consumer products.

15. On May 18, 2018, Mr. Shlaferman executed a written assignment of the '877 Patent, including the right to sue for past infringement, from Vante to Dynamite. Dynamite received all such rights by virtue of the assignment from Vante to Dynamite.

16. Dynamite is the owner of the '877 Patent entitled WALLET CARD MULTI TOOL (a copy thereof is attached as Exhibit A).

17. Figure 2 from the '877 Patent is shown below.



**The Wallet Ninja's Commercial Success**

18. The WALLET NINJA, which embodies the design claimed in the '877 Patent, became an almost instant success.

19. The WALLET NINJA became famous. Mr. Shlaferman was invited to promote the WALLET NINJA as a guest on famous media outlets such as the Howard Stern show, Bloomberg TV, and Good Day New York.

20. The WALLET NINJA was also featured on national television programs, internet articles and in print media such as in the New York Post.

21. The WALLET NINJA became the number one selling flat multitool on Amazon and Groupon, and has been sold at major retail locations in the U.S. including Walmart, Amazon, Walgreens, CVS, and the Home Depot.

22. The WALLET NINJA also became a highly desirable product in the promotional products market.

23. Dynamite sold customized WALLET NINJA products to customers and resellers that desired to print customized business information on the WALLET NINJA products. The WALLET NINJA was and is used as promotional product give aways.

24. Examples of customized WALLET NINJA products Dynamite created are shown below.

  

25. Dynamite continues to offer the WALLET NINJA to retailers, customers and resellers through its website and internal marketing, sales and logistics staff.

26. The WALLET NINJA credit card shaped and sized multi tool has become synonymous with the business and quality of Dynamite. The WALLET NINJA has a unique and distinct appearance as a result of the selection and positioning of the various included tools such as screw-drivers, a ruler, a bottle opener, a box opener, a letter opener, a peeler, a can opener, and wrenches. The general credit card shape and size, material of manufacture, and weight, form part of the distinctive attributes of the WALLET NINJA. Because the WALLET NINJA tool is unique customers recognize it as the famous Dynamite product.

27. The WALLET NINJA also makes for an ideal promotional product since it is a high quality and famous multitool, which most people will want to keep, and it has space to be imprinted with custom logos or messages.

28. The WALLET NINJA tool incorporates a trade dress comprising a distinct "look and feel" of elements. This trade dress includes the selection and placement of the various tools on the credit card shaped piece of metal, such as the rulers, the bottle opener, the can opener, the peeler, the letter opener, the screw drivers, the cell phone stand, the box opener and the printable center area. The trade dress further includes the general credit card shape and size, material of

manufacture, and weight. These elements of the tool are used on Plaintiff's WALLET NINJA tools in combination to create Dynamite's WALLET NINJA trade dress. Dynamite's tool has become readily identifiable by the consuming public as originating from Dynamite.

29. The distinctive and innovative "look and feel" of Plaintiff's WALLET NINJA tool includes the following elements that together and in combination create an overall visual impression unique to Dynamite: a distinctive credit card sized and shaped multi tool featuring corners that work as a screwdrivers, bottle opener, can opener, peeler, cell phone stand, box opener, letter opener, and ruler, all combined in one credit card shaped and sized unit. The elements further include the general credit card shape and size, material of manufacture, and weight.

### WALLET NINJA Knock Offs

30. As a result of the fame and success of the WALLET NINJA, it was copied without permission in violation of Dynamite's patent rights.

31. Dynamite has policed the market and repeatedly asserted its intellectual property and removed infringing WALLET NINJA knock offs from the market.

32. Dynamite successfully enforced its D751,877 patent against Sherman Specialty, Inc. in a jury trial in the Eastern District of New York where Dynamite's D751,877 patent was found valid and willfully infringed in 2023.

### Defendant's Infringing Conduct

33. Defendant, without Dynamite's permission, unlawfully and willfully used Plaintiff's popular WALLET NINJA patented design and trade dress, by utilizing the overall look and feel of the product, and began selling knock off versions of Plaintiff's product, which knock off versions look identical, or nearly identical to Plaintiff's product, on various websites on the Internet, including its own website.

34. Defendant's infringing product is shown below:





#7237 - 10-IN-1 TOOL CARD



35. Defendant has sold its infringing product for at least as low as $3.50 per unit.

36. Plaintiff demanded in writing that Defendant stops its infringing activities, namely, that Defendant stop selling its knock off version of Plaintiff's product, and violating Plaintiff's intellectual property rights.

37. As a result of Plaintiff's correspondence, Defendant claims that it stopped selling the accused product and that it has destroyed its current inventory but Defendant has refused to share any information with Plaintiff about its historical profits from its sales of infringing products.

38. Defendant has also refused to enter into an agreement with Plaintiff assuring Plaintiff that it will not sell the infringing product in the future.

39. There has been actual confusion in the marketplace among consumers. Plaintiff has received inquiries from its customers asking why they should pay Plaintiff's price when they can get the same goods on Defendant's website for significantly less. Such confusion, that Defendant has caused in the minds of the consumers as to the source of the genuine Plaintiff's products, and fake Defendant's knockoffs, has resulted in great financial and reputational damage to the Plaintiff, and therefore, Defendant's illegal conduct in that respect needs to be stopped immediately.

40. This Court has jurisdiction to resolve claims made herein by Dynamite for damages that concern and relate to Defendant's actions for design patent infringement, trade dress infringement, unfair competition and unjust enrichment.

## COUNT I

**Design Patent Infringement (Infringement of the '877 Patent)**

41. Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

42. Dynamite is the owner of all right, title and interest in and to the '877 Patent, and was the owner at the times of Defendant's infringement of the '877 patent.

43. The claimed design of the '877 Patent is shown in Figures 1 through 4 of the patent and described in the accompanying figure descriptions. See Exhibit A.

44. Defendant offered an infringing version of the claimed design for sale, including through its website. A representative image of Defendant's infringing credit card sized multi tool as taken from Defendant's website is shown below:





45. In the eye of the ordinary observer familiar with the relevant prior art, giving such attention as a purchaser usually gives, the claimed design of the '877 Patent and the design of

9

Defendant's infringing tool are substantially the same, such that the ordinary observer would be deceived into believing that Defendant's tool design is the design claimed in the '877 Patent.

46. Dynamite has never authorized the Defendant to make, use, offer to sell or sell its patented tool or the infringing product.

47. On information and belief, the foregoing acts of infringement are willful, intentional, and in disregard of and with indifference to the rights of Dynamite. Defendant had knowledge of the patented design by virtue of the fame of the WALLET NINJA product, which at times relevant hereto was marked with the '877 Patent number. Defendant knew of its own infringement at least by virtue of its substantial copying of the claimed design.

48. Defendant directly infringed, and may continue to directly infringe, the 877 Patent by making, using, offering to sell, selling and/or importing their counterfeit tool, having substantially the same ornamental design as the design claimed in the 877 Patent, in violation of 35 U.S.C. §271(a) and 289.

49. Upon information and belief, Defendant also induced, and continues to induce, others to infringe the '877 Patent by encouraging and promoting the use and/or sale by others of the infringing tool on various websites, that infringe the '877 Patent, in violation of 35 U.S.C. § 271(b).

50. Defendant also received actual knowledge of the '877 Patent and its infringement on or about April 28, 2023, the date on which Defendant responded to a first cease and desist letter.

51. Upon information and belief, Defendant has sold and may continue to sell, offer to sell, distribute and market the credit card shaped and sized multi tool that infringes the '877 Patent, to end consumers and/or resellers with the intent that these parties will use, market, offer to sell and/or sell the products in the United States in a manner that infringes the '877 Patent.

52. Upon information and belief, Defendant was aware of the WALLET NINJA before it decided to launch its infringing product.

53. Upon information and belief, Defendant knew or should have known that the use, marketing, offering to sell and selling of the infringing product on its website or websites of others, or their customers would directly infringe the '877 Patent.

54. Defendant's direct and induced infringement of the '877 Patent has caused and will continue to cause damage to Plaintiff.

55. Defendant's direct and induced infringement also caused and will continue to cause irreparable harm to Dynamite unless and until such infringing conduct is enjoined pursuant to 35 U.S.C. § 283 and/or the equitable powers of this Court.

56. Upon information and belief, Defendant's acts of infringement have been or will be undertaken with knowledge of the '877 Patent and that such acts infringe the '877 Patent. Such acts constitute willful infringement and make this case exceptional pursuant to 35 U.S.C. §§ 284 and 285, and entitle Dynamite to enhanced damages, treble damages, and reasonable attorney fees.

57. As a result of Defendant's infringement of Dynamite's exclusive rights under the 877 Patent, Dynamite is entitled to relief pursuant to under 28 U.S.C. §1338, and to its attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

58. The acts of Defendant are causing and, unless enjoined and restrained by this Court, will continue to cause Dynamite irreparable injury at least by virtue of causing confusion, eroding price and impairing Dynamite's ability to enjoy its exclusive right to make, use and sell the patented design. Dynamite has no adequate remedy at law. Pursuant to 35 U.S.C. §§ 284 and 285, Dynamite is entitled to injunctive relief prohibiting Defendant from further infringing Dynamite's design patent and ordering that it destroys all unauthorized copies of the patented tools.

## COUNT II

### Trade Dress Infringement/Unfair Competition

### 15 U.S.C. § 1125

59. Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

60. Dynamite markets, offers, sells, and delivers in U.S. commerce its distinct WALLET NINJA multi- function tool, which is a multi-function credit card shaped and sized multi tool product through its website and throughout the Internet.

61. Prior to Defendant's conduct that forms the basis for this Complaint, consumers had come to associate the trade dress of the WALLET NINJA multi-function tool with Dynamite.

62. Through its promotional efforts, business conduct, and continuous sales of the WALLET NINJA multi-function tool and its associated trade dress, Dynamite has developed and maintained customers globally and throughout the United States, including in the State of Delaware. Through its widespread and favorable acceptance and recognition by the consuming public, the "look and feel" of Dynamite's WALLET NINJA multi-function tool has become an asset of substantial value as a symbol of Dynamite, its high-quality products and services, and its goodwill.

63. Accordingly, Dynamite has established valid and enforceable trade dress rights in the "look and feel" of the WALLET NINJA multi-function tool, as described above.

64. Notwithstanding Dynamite's preexisting valid and enforceable rights in the "look and feel" of the WALLET NINJA multi-function tool, Defendant, without permission or approval from Dynamite, are using Dynamite's trade dress on their own tools by offering for sale tools that

have identical or substantially the same "look and feel" as Dynamite's WALLET NINJA multi-function tool, which tools Defendant has sold in the United States, including in Delaware.

65. As a result of Defendant's unauthorized sale of infringing tools, Defendant has been using, and may continue to use without authorization, Dynamite's WALLET NINJA trade dress.

66. Dynamite and Defendant sell (and have been selling) their respective products to customers and clients and/or the relevant consumer base in the same geographical locations and through the same trade channels.

67. Defendant is a direct competitor of Dynamite.

68. Defendant's unauthorized use of the "look and feel" of the Dynamite's WALLET NINJA multi-function tool, in connection with offering for sale and selling competing products is not authorized by Dynamite and is likely to cause consumer confusion and mistake, and to deceive consumers as to the source, origin, or affiliation of Defendant's products.

69. Dynamite has a discernible interest in the "look and feel" of the Dynamite WALLET NINJA multi tool, and Dynamite has been, and continues to be, injured by Defendant's unauthorized and unlawful use of Dynamite's trade dress.

70. Defendant's unauthorized use of the "look and feel" of the Dynamite WALLET NINJA multi tool is causing confusion among purchasers and potential purchasers of Dynamite's products.

71. The acts by Defendant described above constitute an infringement and misappropriation of Dynamite's rights in and to the use of the "look and feel" of the Dynamite WALLET NINJA multi-function tool, with consequent damages to Dynamite and the business and goodwill associated with and symbolized by Dynamite's trade dress, and, specifically, give rise to this claim under 15 U.S.C. § 1125.

72. Defendant's acts of unfair competition have caused and are causing irreparable harm to Dynamite, Dynamite's goodwill, and Dynamite's rights in and to the "look and feel" of the Dynamite WALLET NINJA multi-function tool, in an amount which cannot be adequately determined at this time and, unless restrained, will cause further irreparable injury and damage, leaving Dynamite with no adequate remedy at law.

73. On information and belief, Defendant's acts of infringement and misappropriation have been and are being committed with actual knowledge of Dynamite's prior rights in the "look and feel" of the Dynamite WALLET NINJA multi tool, and are willful and in gross disregard of Dynamite's rights.

74. By reason of the foregoing, Dynamite is entitled to injunctive relief against Defendant, and anyone associated therewith, to restrain further acts of unfair competition and trade dress infringement, and to recover any damages proven to have been caused by reason of Defendant's aforesaid acts of unfair competition and trade dress infringement, and to recover enhanced damages based upon the willful, intentional, and/or grossly negligent activities of Defendant.

## COUNT III

### Unfair Competition and False Designation of Origin

### Common Law and Del. Code tit. 6 § 2532

75. Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

76. Dynamite owns common law trademark rights to its unique multi-purpose and multi-function credit card-sized and credit card-shaped set of tools recognizable by having a particular shape and layout of the small tools on the edges and in the middle of such tool, which

comprises, inter alia, screwdrivers, bottle opener, can opener, peeler, cell phone stand, box opener, letter opener, and ruler, all appearing as a part of one unit. The tool unit has been in continuous use in interstate commerce by Dynamite prior to any date which can be legally claimed by Defendant. The mark is distinctive by virtue of inherent distinctiveness and/or the acquired distinctiveness in the mark, through Dynamite's efforts of promoting its goodwill and reputation in the relevant marketplace.

77. Defendant knowingly and willfully has been and may continue to advertise and sell (i) identically or nearly identically looking tools, except for a few minor changes, and/or (ii) tools which are identical to the unique design owned by Dynamite without authorization by Dynamite in the State of Delaware, and (iii) at a price substantially lower than that of the Plaintiff, and across numerous other states where Dynamite and Defendant conducts business.

78. Use by Defendant of the unique design of Dynamite's multi tool in commerce is likely to cause confusion and has caused confusion, in the marketplace misleading the public into thinking Defendant's unauthorized use is somehow associated with Dynamite, causing competitive injury to Dynamite.

79. Acts of Defendant as alleged herein constitute, among other things, false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact which are likely to cause confusion or mistake, or to deceive the public as to the origin, sponsorship, or approval of the services of Defendant.

80. As a direct and proximate result of Defendant's acts, Dynamite has suffered injury, including irreparable injury, and damages, including lost profits, reasonable royalties, and other damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands a trial by jury and requests that the Court enter judgment as follows:

(a) Enter judgment against Defendant in favor of Dynamite for the violations alleged in this Complaint;

(b) Compelling Defendant to account to Dynamite for any and all profits derived as a result of its infringing acts;

(c) Award Dynamite all damages sustained by it as a result of Defendant's wrongful acts and all profits realized by Defendant due to its wrongful acts, pursuant to 35 U.S.C. §§ 284 and 285;

(d) At Dynamite's election, awarding statutory damages in the maximum amount against Dynamite for infringement of Dynamite's design patent, pursuant to 35 U.S.C. §§ 284 and 285;

(e) Award attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285;

(f) Directing Defendant to pay over to Dynamite its costs, disbursements and reasonable attorneys' fees and expenses, together with pre-judgment interest incurred by Dynamite in relation to trying to stop the infringement by the Defendant by way of contacting Defendant through Plaintiff's attorneys, demanding that Defendant in fact stop such infringement;

(g) For a permanent injunction, restraining Defendant and its affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with it from:

i. Directly or indirectly infringing in any manner Dynamite's design patent; and

      ii. From causing, contributing to, enabling, facilitating, or participating in the infringement of Dynamite's design patent or other exclusive rights;

(h) Order Defendant to pay discretionary costs and prejudgment interest;

(i) Order an accounting for any knock off products not presented at trial and an award by the Court of additional damages for any such knock off products;

(j) Order Defendant including all its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendant or in concert or participation with Defendant, and each of them, be enjoined from:

    a. advertising, marketing, promoting, offering for sale, distributing, or selling an infringing and counterfeit credit card shaped multi tool;

    b. using any trade dress, design, or source designation of any kind on or in connection with Defendant's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to Dynamite's trade dress.

(k) Defendant be ordered to cease offering for sale, marketing, promoting, and selling and to recall all infringing goods, or any other goods bearing the Dynamite trade dress that is in Defendant's possession or has been shipped by Defendant or under its authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each such store or customer a copy of this Court's order as it relates to said injunctive relief against Defendant, including posting same on any and all website and media owned or controlled by Defendant including but not limited to Facebook;

(l) Defendant be ordered to deliver up for impoundment and for destruction, all knock off tools, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional materials, stationery, or other materials in the possession, custody or under the control of Defendant that are found to adopt or infringe any of Dynamite's trade dress or that otherwise unfairly compete with Dynamite and its products;

(m) Defendant be compelled to account to Dynamite for any and all profits derived by Defendant from the sale or distribution of the infringing products;

(n) Retaining jurisdiction of this action in this Court for the purpose of enabling Dynamite to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of such order, for the enforcement or compliance therewith, and for the punishment of any violation thereof;

(o) That Defendant unjustly enriched itself and that Dynamite be awarded damages arising out of the unjust enrichment;

(p) Awarding prejudgment interest and costs;

(q) Finding this to be an exceptional case and awarding reasonable attorneys' fees to Dynamite;

(r) Based on Defendant's willful and deliberate infringement, and to deter such conduct in the future, Dynamite requests punitive damages including prejudgment and post-judgment interest on all monetary awards, and to award treble damages to Plaintiff;

(s) Grant Dynamite such other and further relief, at law or in equity, to which Dynamite is justly entitled.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues permitted to be tried by jury.

Dated: February 27, 2024

OF COUNSEL:

Michael Cukor
Vincent McGeary
**MCGEARY CUKOR, LLC**
150 Morristown Road, Suite 205
Bernardsville, NJ 07924
Telephone: (973) 339-7367
mcukor@mcgearycukor.com
vmcgeary@mcgearycukor.com

PANITCH SCHWARZE BELISARIO & NADEL LLP

*/s/ John D. Simmons*
John D. Simmons (#5996)
Dennis Butler (#5981)
Keith A. Jones (#7011)
Well Fargo Tower
2200 Concord Pike, Suite 201
Wilmington, DE 19803
Telephone: (302) 394-6001
Facsimile: (215) 965-1331
jsimmons@panitchlaw.com
dbutler@panitchlaw.com
kjones@panitchlaw.com

***Counsel for Plaintiff***
***Dynamite Marketing, Inc.***